## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**L. V. JOHNSON AND CORA J. JOHNSON**                                   **PLAINTIFFS**

**V.**                                                 **CIVIL ACTION NO. 2:14cv51-KS-MTP**

**DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR NOVASTAR
MORTGAGE FUNDING TRUST SERIES
2007-1; DEUTSCHE BANK TRUST
CORPORATION; DEUTSCHE BANK AG;
MORGAN STANLEY; MORRIS &
ASSOCIATES; JAMES Q. BACCHUS AND
CECELIA BACCHUS; and JOHN AND
JANE DOES 1-100**                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

     This matter is before the Court on the Plaintiffs L. V. Johnson and Cora J.

Johnson's Motion to Remand [19].  Having considered the submissions of the parties,

the record, and the applicable law, the Court finds that the motion is well taken and this

action will be remanded to the Circuit Court of Forrest County, Mississippi.

### I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

     Plaintiffs  L. V. Johnson and Cora J. Johnson (collectively referred to as the

"Johnsons" or "Plaintiffs") assert numerous state law claims relating to a loan secured by

a Note [31-1] and a Deed of Trust [31-2] encumbering certain real property located at

867 North Main Street, Hattiesburg, Mississippi (the "Subject Property").  On or about

March 20, 2002, the Johnsons obtained title to the Subject Property via a Warranty

Deed.  (*See* Doc. No. [1-2 at ECF p. 31].)  On or about November 28, 2006, the

Johnsons executed the aforementioned Note [31-1] and Deed of Trust [31-2] in

connection with a mortgage loan in the amount of $160,000.00.  Primekey Mortgage

("Primekey") is listed as the "Lender" under the Note and Deed of Trust.  Mortgage

Electronic Registration Systems, Inc. ("MERS"), acting solely as a nominee for Primekey and its successors and assigns, is identified as the beneficiary under the Deed of Trust.

Effective November 1, 2007, servicing of the Johnsons' loan was assigned to Saxon Mortgage Services, Inc. ("Saxon").[1]  (*See* Doc. No. [1-2 at ECF p. 48].)  The Johnsons allege that due to financial difficulties, they reached out to Saxon to discuss modifying their loan payments.  On or about June 1, 2009, the Johnsons were approved to participate in a Trial Period Plan ("TPP") under the Home Affordable Modification Program ("HAMP"), which required monthly payments in the amount of $866.44 for June, July, and August of 2009.  (*See* Doc. No. [31-4].)  The Johnsons contend that they made the required TPP payments and submitted all the documentation requested of them in order to be approved for a permanent modification of their mortgage loan. Furthermore, Saxon purportedly provided the Johnsons with conflicting information regarding their eligibility to receive a modification under HAMP after they made the TPP payments.  In March of 2010, the Johnsons were advised that Saxon could not provide them with a modification because they failed to make all of the required TPP payments by the end of the trial period.  (*See* Doc. No. [31-5].)

On June 18, 2010, MERS assigned the Deed of Trust encumbering the Subject Property to Deutsche Bank National Trust Company, as trustee for Novastar Mortgage Funding Trust Series 2007-1 ("DBNTC").[2]  (*See* Doc. No. [31-3].)  Saxon, as attorney-

---

[1] Plaintiffs contend that Saxon is a subsidiary of Defendant Morgan Stanley.

[2] Plaintiffs allege that DBNTC is a subsidiary of Defendant Deutsche Bank Trust Corporation ("Deutsche Bank"), which, in turn, is a subsidiary of Defendant Deutsche

in-fact for DBNTC, subsequently executed a Substitution of Trustee [31-6], appointing Emily Kaye Courteau as substitute trustee and authorizing Courteau to conduct a foreclosure sale on the Subject Property.[3]   On November 23, 2010, Courteau executed a Substitute Trustee's Deed [31-7], indicating that the Subject Property sold to DBNTC in exchange for a bid of $111,200.00.  On October 13, 2011, DBNTC sold the Subject Property to Defendants James Q. Bacchus and Cecelia Bacchus (the "Bacchuses"). (*See* Special Warranty Deed [11-10].)

On November 18, 2013, Plaintiffs filed suit against DBNTC, Deutsche Bank, Deutsche Bank AG, Morgan Stanley, Morris & Associates, and the Bacchuses in the Circuit Court of Forrest County, Mississippi.  (*See* Complaint [31-8].)  Plaintiffs assert that "[t]his is an action for tortious conduct, negligence and/or gross negligence, breach of contract, wrongful, illegal, and/or fraudulent foreclosure, ejectment, for monetary damages, to set aside the substitute trustee's deed and subsequent conveyances, and for other relief . . . ."  (Compl. [31-8] at ¶ 1.)  It appears that the Bacchuses are the only Defendants who are citizens of Mississippi.  The counts in the Complaint for trespass, cancellation of void conveyances, and ejectment specifically pertain to the Bacchuses. Plaintiffs allege that the Bacchuses are in illegal possession of the Subject Property because the underlying foreclosure sale to DBNTC in November of 2010 is void due to it being conducted without statutory or contractual authority.  Plaintiffs seek compensatory

---

Bank AG.

[3] Plaintiffs contend that Courteau is an employee of Defendant Morris & Associates.

damages, punitive damages, attorneys' fees, and a judgment ejecting the Bacchuses from the Subject Property and adjudicating the Plaintiffs to be the legal owners.

On April 9, 2014, DBNTC, Deutsche Bank, Deutsche Bank AG, and Morgan Stanley removed the proceeding to this Court.  (*See* Notice of Removal [1].)  On this same date, Morris & Associates and the Bacchuses joined in and consented to the removal.  (*See* Doc. Nos. [2], [3].)  Defendants assert that the Court has original jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1334 (bankruptcy jurisdiction).  Defendants rely upon HAMP and the Edge Act, 12 U.S.C. § 632, as bases for the existence of federal question jurisdiction.  As to § 1332, the Notice of Removal posits that complete diversity of citizenship exists between the Plaintiffs and all properly joined Defendants.  The Notice of Removal further asserts that the Mississippi citizenship of the Bacchuses is immaterial because they have been improperly joined as Defendants.  Bankruptcy jurisdiction is invoked in connection with "Plaintiff Cora J. Johnson fil[ing] a Chapter 13 petition in the United States Bankruptcy Court for the Southern District of Mississippi on July 20, 2010 . . . ."  (Notice of Removal [1] at ¶ 7.)

On May 9, 2014, Plaintiffs filed their Motion to Remand [19].  Plaintiffs argue that the Court should remand this case to the Circuit Court of Forrest County, Mississippi due to the absence of subject matter jurisdiction.  On June 9, DBNTC, Deutsche Bank, Deutsche Bank AG, and Morgan Stanley filed their Response in Opposition [31] to the remand motion.[4]  Also on June 9, Morris & Associates filed their Joinder [33] in the

---

[4] This filing indicates that oral argument is requested on the Motion to Remand. Local Uniform Civil Rule 7 provides that the "court will decide motions without a hearing

Response in Opposition [31].  The Bacchuses have not responded to the Motion to

Remand [19] via a joinder or a separate response.  DBNTC, Deutsche Bank, Deutsche

Bank AG, Morgan Stanley, and Morris & Associates will hereinafter be collectively

referred to as "Defendants" given the uniformity of their positions regarding subject

matter jurisdiction.

## II.  DISCUSSION

### A.     General Removal Standards

"A district court has removal jurisdiction in any case where it has original

jurisdiction."  *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citing 28 U.S.C. §

1441(a)).  "The removing party bears the burden of establishing that federal jurisdiction

exists."  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v.*

*Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961)).  A motion to

remand alleging a procedural defect in removal must be brought within thirty (30) days

of the filing of the notice of removal, but "the case shall be remanded" at any time before

final judgment if it appears that subject matter jurisdiction is lacking.  28 U.S.C. §

1447(c).  Since federal courts are of limited jurisdiction and removal raises significant

federalism concerns, the "removal statutes are to be construed strictly against removal

and for remand."  *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996)

(citations omitted).  Courts are to consider "jurisdictional facts as they existed at the time

_____

or oral argument unless otherwise ordered by the court on its own motion or, in its
discretion, upon written request made by counsel in an easily discernible manner on the
face of the motion or response."  L.U.Civ.R. 7(b)(6)(A).  The Court has determined that
oral argument is unnecessary for the resolution of the Plaintiffs' remand request.

of removal" in ruling on a motion to remand.  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995).

### B.    Bankruptcy Jurisdiction

The Johnsons argue that Cora J. Johnson does not have a bankruptcy estate and that the bankruptcy petition cited in the Notice of Removal was filed by an individual with the same name.  Defendants concede this point in response to the Motion to Remand [19].  "Defendants have subsequently determined that the 'Cora Johnson' who filed bankruptcy is not the Plaintiff in this action."  (Defs.' Mem. of Auths. in Opp. to Mot. to Remand [32] at p. 4. n.2.)  The Court lacks original jurisdiction over this action pursuant to 28 U.S.C. § 1334 due to the absence of any bankruptcy proceeding associated with Plaintiff Cora J. Johnson.

### C.    Federal Question

Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A court must examine the face of the plaintiff's "well-pleaded complaint" in determining whether a cause of action arises under federal law.  *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).  An affirmative defense raising a federal question is insufficient to confer jurisdiction.  *Id.* (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S. Ct. 42, 53 L. Ed. 126 (1908)).  "A federal question exists only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law."  *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38

(5th Cir. 2008) (citations and internal quotation marks omitted).  Ordinarily, a plaintiff

"may avoid federal jurisdiction by exclusive reliance on state law" even if he possesses a

federal claim.  *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (quoting

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318

(1987)).  The Court finds neither a federal cause of action nor a substantial question of

federal law on the face of the Johnsons' well-pleaded Complaint.

> **1.    HAMP**

HAMP is a federal program designed to assist homeowners who have defaulted

on their mortgage loans, or who are at risk of defaulting, by providing financial incentives

to mortgage servicers and lenders to lower mortgage payments through the modification

of eligible loans.  *See United States v. Morrison*, 713 F.3d 271, 274 (5th Cir. 2013).  In

support of their fraud-based claims, the Johnsons allege that "Saxon, subsidiary of

Defendant Morgan Stanley, acting on behalf of Defendant Deutsche as its attorney-in-

fact, made" certain representations because it participated in HAMP.  (Compl. [31-8] at

¶¶ 69-71, 109-11.)  The Johnsons further allege that "Saxon, subsidiary of Defendant

Morgan Stanley, acting on behalf of Defendant Deutsche as its attorney-in-fact, and

Defendant Morris & Associates, breached" a duty of care by failing to comply with HAMP

directives and by not permanently modifying the mortgage loan "as required under

HAMP . . . ."  (Compl. [31-8] at ¶ 125.)  Based on these allegations, Defendants argue

that the Johnsons have raised a substantial question of federal law falling squarely

within the Court's jurisdiction under § 1331.  The Court disagrees.

The United States Supreme Court has found that federal question jurisdiction is not implicated when a complaint alleges a violation of a federal statute in support of a state law claim and there is no private right of action under the federal statute.  *See Merrell Dow*, 478 U.S. at 805, 814, 817.  In *Merrell Dow*, the defendant argued that jurisdiction lied under § 1331 based on the plaintiffs' claim that its violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") constituted negligence and proximately caused certain injuries.  *See id.* at 805-06.  The parties nonetheless agreed that there is no federal right of action for violations of the FDCA.  *See id.* at 810.  The Court held:

> We think it would . . . flout, or at least undermine, congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction and provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a "rebuttable presumption" or a "proximate cause" under state law, rather than a federal action under federal law.

*Id.* at 812.  Fifth Circuit precedent is in accord.  *See Singh*, 538 F.3d at 339 (holding that federal jurisdiction was absent over a state law legal malpractice claim arising from federal trademark litigation in part because federal trademark law does not provide a remedy to clients displeased with the performance of their trademark attorneys); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169 (5th Cir. 1988) (beginning the jurisdictional inquiry "with the minimum requirement that the federal statutes involved provide a private, federal remedy") (citations omitted).

Numerous courts, including this Court, have found that no private right of action exists under HAMP.  *See, e.g.*, *Howard v. CitiMortgage, Inc.*, No. 1:13cv543, 2014 WL 6802550, at *4 (S.D. Miss. Dec. 2, 2014) ("The clear weight of authority among district courts in the Fifth Circuit counsels that HAMP fails to afford borrowers a private right of

action."); *Goffney v. Bank of Am., N.A.*, 897 F. Supp. 2d 520, 526 (S.D. Tex. 2012) ("Congress has not created a cause of action for violations of the HAMP . . . guidelines."); *Poppelreiter v. GMAC Mortgage, LLC*, No. 1:11cv8, 2011 WL 6100440, at *4 (N.D. Miss. Dec. 7, 2011) (providing that a majority of courts have found that HAMP does not give rise to a private right of action); *Christensen v. Bank of Am., N.A.*, No. 5:10cv176, 2011 WL 7070568, at *3 (N.D. Tex. Nov. 4, 2011) (same).  The Johnsons' inability to maintain a federal cause of action for a HAMP violation necessarily negates the existence of a federal question based on any alleged violation of HAMP underlying their state law claims.  *See Merrell Dow*, 478 U.S. at 812, 817.  Accordingly, the references to HAMP in the Complaint fail to give rise to jurisdiction under § 1331.

## 2.    The Edge Act, 12 U.S.C. § 632

Section 632 states in pertinent part:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632.  The parties fail to cite, and the Court has not identified, any Supreme Court or Fifth Circuit opinion substantively construing this statute.  Other courts have offered mixed opinions regarding whether the Edge Act should be narrowly or broadly

construed.  *See Sollitt v. KeyCorp*, 463 Fed. Appx. 471, 474 (6th Cir. 2012) (citing divergent authorities); *Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397, 2012 WL 4794450, at *5 (S.D.N.Y. Oct. 9, 2012) (same).  However, there appears to be a general consensus regarding the elements necessary to establish federal jurisdiction under § 632:  (1) the action must be civil in nature; (2) one of the parties to the action must be a corporation organized under the laws of the United States; and (3) the action must arise out of a transaction involving international or foreign banking.[5]  It cannot be doubted that the Edge Act is a removal statute since it authorizes a defendant to "remove . . . [a] suit[] from a State court . . . ."  28 U.S.C. § 632.  The Court will strictly construe the above-referenced statutory elements given the well-established policy "calling for the strict construction of such [removal] legislation."  *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32,123 S. Ct. 366, 154 L. Ed. 2d 368 (2002) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)).

The first two required elements for an exercise of jurisdiction under § 632 are met in this case.  This is a civil action and there is no dispute over the Defendants' assertion that DBNTC "is a national bank association organized under the laws of the United States . . . ."  (Notice of Removal [1] at ¶ 5.)  The rub lies in determining whether this lawsuit arises "out of transactions involving international or foreign banking . . . ."  12 U.S.C. § 632.  Defendants' jurisdictional argument focuses on the Johnsons' claims

---

[5] *See, e.g.*, *Am. Int'l Group, Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 780 (2d Cir. 2013); *Sollitt*, 463 Fed. Appx. at 473; *JPMorgan Chase Bank, NA v. Wanke*, No. 1:12cv893, 2013 WL 308766, at *2 (S.D. Ohio Jan. 25, 2013); *Retailers Nat'l Bank v. Harding*, No. C 03-4190, 2006 WL 6181282, at *2 (N.D. Cal. June 30, 2006).

against Deutsche Bank AG since it is a German bank.  "Having alleged that the Mortgage Loan was improperly serviced (an activity deemed to be within the business of banking) by a foreign financial institution [Deutsche Bank AG] and its subsidiaries, the subject transaction clearly 'involves' foreign banking and/or financial operations."  (Defs.' Mem. of Auths. in Opp. to Mot. to Remand [32] at p. 18.)  The Johnsons argue that they have alleged only state law claims arising out of a state law governed foreclosure action; that they have not alleged any foreign transaction; and, that their claims do not arise out of any foreign banking transaction by virtue of Deutsche Bank AG's German citizenship.

The Court finds that this wrongful foreclosure action arises out of domestic banking transactions or financial operations.  The Subject Property is located in Hattiesburg, Mississippi.  (*See* Compl. [31-8] at ¶ 1.)  The Johnsons are residents of Forrest County, Mississippi.  (*See* Compl. [31-8] at ¶ 2.)  The instruments evidencing the financial and real estate transactions discussed in the Complaint were executed within the United States.  (*See* Warranty Deed [1-2 at ECF pp. 31-32]; Note [31-1 at ECF p. 1]; Deed of Trust [31-2 at ECF p. 14]; Assignment of Deed of Trust [31-3]; Substitution of Trustee [31-6 at ECF pp. 2, 6]; Substitute Trustee's Deed [31-7 at ECF p. 2]; Special Warranty Deed [11-10 at ECF pp. 1, 5].)[6]  Further, the conflicting written communications regarding the Johnsons' ability to obtain a permanent modification of their mortgage loan, which are cited in support of the Johnsons' misrepresentation

---

[6] It is not clear where the Home Affordable Modification Trial Period Plan [31-4] was executed.  However, nothing has been presented to the Court leading to the plausible inference that this document was signed by the Johnsons or Saxon (as attorney-in-fact for DBNTC) outside of the United States.

claims, appear to have originated from Fort Worth, Texas.  (*See* Doc. No. [1-2 at ECF pp. 61-64].)

The Complaint does assert that Deutsche Bank AG maintains "its principal place of business in Frankfurt, Germany . . . ."  (Compl. [38-1] at ¶ 5.)  However, there are no other international references in the pleading, much less any factual averment showing that Deutsche Bank AG engaged in a foreign banking transaction giving rise to this litigation.  The only allegations specifically pertaining to Deutsche Bank AG in support of liability are as follows:  "Deutsche Bank AG is sued in its capacity as *Respondeat Superior* for its agents, assigns, owners, and insurers.  Deutsche Bank Trust Corporation is a wholly owned subsidiary of Deutsche Bank AG."  (Compl. [38-1] at ¶ 5.)  These bare allegations establish nothing.  *See Davila v. United States*, 713 F.3d 248, 255 (5th Cir. 2013) (the Fifth Circuit does "not rely upon conclusional allegations or legal conclusions" in its jurisdictional analysis) (citation omitted).[7]  Therefore, this action comports with several cases in which district courts have refused to exercise federal

---

[7] Corporate separateness is presumed under federal and Mississippi law.  *See, e.g.*, *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37, 45 S. Ct. 250, 69 L. Ed. 634 (1925) *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 978 (¶ 28) (Miss. 2007).  The Complaint does not plead facts overcoming this presumption as between Deutsche Bank AG and any other entity; i.e., it is far from evident that Deutsche Bank AG asserts such control over another Defendant as "to make the other its agent or alter ego," *Dickson Marine*, 179 F.3d at 338, or that another Defendant is nothing more than an "instrumentality or agency" of Deutsche Bank AG or "a sham . . . used in fraud, by the dominant corporation."  *Buchanan*, 957 So. 2d at 978 (¶ 28).  As a result, any alleged acts or omissions of DBNTC involving banking cannot be imputed to Deutsche Bank AG solely by virtue of the existence of a parent-subsidiary relationship between the two entities.  Moreover, the Complaint fails to evince any "transactions involving *international* or *foreign* banking" that possibly could be imputed to Deutsche Bank AG or any other Defendant.  12 U.S.C. § 632 (emphasis added).

jurisdiction under § 632 "merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties." *Prudential Ins. Co. of Am. v. J.P. Morgan Sec., LLC*, No. 2:12cv03489, 2012 WL 6771977, at *9 (D.N.J. Dec. 20, 2012) (quoting *Societe d 'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011)); *see also New Mexico ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, No. CIV 09-0178, 2009 WL 3672921, at *3 (D.N.M. Apr. 13, 2009) (quoting *Larzard Freres & Co. v. First Nat'l Bank of Md.*, 1991 WL 221087, at *1 (S.D.N.Y. 1991)).

Defendants' citation to a 2008 decision from the Northern District of Texas in support of Edge Act jurisdiction is unavailing. *See Highland Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 627 F. Supp. 2d 730 (N.D. Tex. 2008).  In *LifeCare Holdings*, the district court concluded that jurisdiction existed under the Edge Act where the plaintiffs alleged breach of a credit agreement and one of the plaintiffs was a foreign party.  *See* 627 F. Supp. 2d at 732, 735, 738.  No showing has been made in this case that Deutsche Bank AG is a party to any of the agreements sued upon by the Johnsons.  The purported connection between this litigation and foreign banking as a result of Defendant Deutsche Bank AG's German citizenship is simply too "remote and tenuous" to give rise to jurisdiction under the Edge Act.  *Wanke*, 2013 WL 308766, at *3 (holding that the Edge Act did not confer jurisdiction over a state law foreclosure action).  Defendants have failed to establish that federal jurisdiction under 12 U.S.C. § 632 exists in this case.

### D.    Diversity of Citizenship (Improper Joinder)

Complete diversity of citizenship between the plaintiffs and defendants in an

action is required for jurisdiction to lie under 28 U.S.C. § 1332.  *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 812 (5th Cir. 2011) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005)).  The doctrine of improper joinder presents a narrow exception to the requirement of complete diversity, and the party invoking the doctrine bears a heavy burden.  *McDonal v. Abbot Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (citation omitted).  The removing party must show either of the following:  "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Id.* (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)).  The first method for establishing improper joinder is not at issue here.  Under the second method, "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)).[8]  A mere theoretical—as opposed to a reasonable—possibility of recovery will not defeat a claim of improper joinder.  *See Smallwood*, 385 F.3d at 573 n.9 (citation omitted).  Nonetheless, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."  *Id.* at 573.

A court has discretion to employ one of two standards to determine whether a plaintiff has a reasonable basis for recovery against a non-diverse defendant under state

---

[8] The terms "fraudulent joinder" and "improper joinder" are interchangeable, although the Fifth Circuit prefers the use of the latter.  *Smallwood*, 385 F.3d at 571 n.1.

law.  First, the court may conduct a Rule 12(b)(6)-type inquiry, looking at the well-pleaded allegations of the complaint to decide if they adequately state a claim for relief. *Id.* (citations omitted).  Second, "there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.  In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 389 n.10 (5th Cir. 2000)).  A "court should ordinarily resolve a [claim of] improper joinder by conducting a Rule 12(b)(6)-type analysis." *McDonal*, 408 F.3d at 183 n.6.  "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.  Furthermore, "any piercing of the pleadings should not entail substantial hearings." *Id.* at 574.  Otherwise, the court risks wading beyond the issue of jurisdiction and into the merits of a plaintiff's claims.  *See id.* "[A]ny contested issues of facts and any ambiguities of state law must be resolved in favor of remand." *Lucien*, 756 F.3d at 793 (citation and internal quotation marks omitted).

The issue of improper joinder before the Court turns on the Plaintiffs' claims against the Bacchuses given their undisputed Mississippi citizenship.  Defendants argue that the Johnsons have no possibility of recovery against the Bacchuses because they were bona fide purchasers for value with respect to the Subject Property.  Defendants invite the Court to pierce the pleadings in support of this contention by submitting a Declaration [31-9] executed by James Q. Bacchus.  The Declaration states in pertinent part that the Bacchuses purchased the Subject Property in October of 2011, for

$29,900.00, and that the Bacchuses had no knowledge of any adverse claims by the Johnsons at the time of the purchase.  Notwithstanding this Declaration, the Court finds that the Defendants have failed to meet their "heavy burden of proving that the joinder of the . . . [Bacchuses] was improper."  *Smallwood*, 385 F.3d at 574.

The Court does not write on a blank slate in considering the Defendants' improper joinder argument.  The assertion that a non-diverse defendant was improperly joined in light of his status as a bona fide purchaser for value has been raised in support of the existence of diversity jurisdiction in several foreclosure-related actions removed from Mississippi's state courts.[9]  In each of the cases cited below, the assertion was found not to preclude remand.

Judge Reeves' fairly recent decision in *Housdan v. JPMorgan Chase Bank, N.A.*, is instructive.  There, Tina Housdan filed suit against JPMorgan Chase Bank ("Chase") and several Individual Defendants in the Circuit Court of Rankin County, Mississippi after Chase foreclosed on Housdan's property and conveyed the property to the Individual Defendants.  *See* 2014 WL 4814760, at *1-2.  Housdan and the Individual Defendants were all citizens of Mississippi.  *See id.* at *2.  Chase nonetheless removed the proceeding to federal court, alleging that Housdan could not maintain a cause of

─────────────────────

[9] *See Housdan v. JPMorgan Chase Bank, N.A.*, No. 3:13cv543, 2014 WL 4814760, at *4 (S.D. Miss. Sept. 24, 2014); *Brasel v. JPMorgan Chase, N.A.*, No. 1:13cv206, 2014 WL 2879698, at *4 (N.D. Miss. June 24, 2014); *Sturgis v. JPMorgan Chase Bank, N.A.*, No. 3:13cv544, Order [36] at 10 (S.D. Miss. May 2, 2014); *Wales v. Wells Fargo N.A.*, No. 3:13cv461, Order [18] at 7, 11 (S.D. Miss. February 5, 2014); *Kelley v. Wells Fargo, N.A.*, No. 1:13cv354, 2013 WL 6178243, at *3 (S.D. Miss. Nov. 22, 2013); *Jones v. Bank of Am., N.A.*, 3:13cv405, Order [17] at 4-6 (S.D. Miss. Nov. 4, 2013); *Jackson v. Bank of N.Y. Mellon Trust Co., N.A.*, 1:13cv246, Order [15] at 8-10 (S.D. Miss. Oct. 25, 2013); *Randall v. Bank of Am., N.A.*, 3:13cv470, Order [12] at 8-11 (S.D. Miss. Sept. 24, 2013).

action against the Individual Defendants under Mississippi law due to their status as bona fide purchasers.  *See id.* at *2, 4.  Chase submitted an affidavit executed by one of the Individuals Defendants in support of this contention and in opposition to remand.  *See id.* at *3 n.4.  Judge Reeves declined to pierce the pleadings and consider the affidavit in the jurisdictional analysis.  *See id.* ("Plaintiff has not omitted necessary facts that make it necessary to pierce the pleadings.").  Judge Reeves also found that the allegations of the complaint demonstrated a possibility of recovery as to Housdan's claims for trespass and ejectment against the Individual Defendants.  With respect to the latter claim, "[i]f the foreclosure sale was determined to be void, and Housdan demonstrated that her title to the property was superior to that of the Individual Defendants, she could state a claim for ejectment."  *Id.* at *4 (citing *Sturgis*, No. 3:13cv544, Order [36] at 8; Miss. Code Ann. § 11-19-1).[10]  Judge Reeves rejected Chase's removal argument based on the purported bona fide purchaser status of the Individual Defendants as follows:

> [T]his Court concurs with the decision of previous Mississippi courts which

---

[10] Under section 11-19-1 of the Mississippi Code, "[a] civil action seeking ejectment as relief may be maintained in all cases where the plaintiff is legally entitled to the possession of the land sued for and demanded."  Miss. Code Ann. § 11-19-1. Mississippi statutory law requires that the person in possession of real property be made a defendant in an action seeking ejectment.  "If the premises for which the action is brought be actually occupied by any person, such actual occupant shall be made a defendant in the suit . . . ."  Miss. Code Ann. § 11-19-5.  As recognized in *Housdan*, there are also Mississippi cases holding that a void foreclosure sale passes no enforceable title.  *See Chase Home Fin., L.L.C. v. Hobson*, 81 So. 3d 1097, 1101 (¶ 13) (Miss. 2012) (providing that if the foreclosure sale was conducted without statutory authority, the sale was void and the purchaser did not acquire anything at the subject sale) (citations omitted); *Osborne v. Neblett*, 65 So. 3d 311, 313 (¶ 9) (Miss. Ct. App. 2011) (holding that a foreclosure sale failing to comply with the publication requirements of Miss. Code Ann. § 89-1-55 "is a nullity and unenforceable under the law").

have evaluated the same subject.  The Individual Defendants' alleged status as bona fide purchasers for value without notice is "an affirmative defense and must be sustained by competent proof."  *Brasel*, 2014 WL 2879698, at *4 (citing *Memphis Hardwood Flooring Co. v. Daniel*, 771 So.2d 924, 933 (Miss.2000)).  "This Court cannot properly make a ruling in this regard at the motion for remand stage, because such a determination would require this Court to engage in an *Erie* guess and rule on the merits of the controversy."  *Id.*; *see also Sturgis*, No. 3:13–cv–544–LG–JMR, Docket No. 36, at 10 (holding that determining whether plaintiff's claim could override the bona fide purchaser affirmative defense "is the type of analysis that is precluded in determining an improper joinder issue, and makes remand all the more appropriate.").

*Housdan*, 2014 WL 4814760, at *4.

This Court finds that the Johnsons, like Housdan, have stated viable claims for trespass and ejectment against non-diverse Individual Defendants.  In Mississippi, a "trespass to land is committed when a person intentionally invades the land of another without a license or other right."  *Reeves v. Meridian S. Ry., LLC*, 61 So. 3d 964, 968 (¶ 19) (Miss. Ct. App. 2011) (citing *Thomas v. Harrah's Vicksburg Corp.*, 734 So. 2d 312, 316 (¶ 10) (Miss. Ct. App. 1999)).  A defendant's "good-faith belief that he has a right to enter the land" does not immunize him from liability.  *Id.* (citing *Thomas*, 734 So. 2d at 316 (¶ 8)).  The Complaint asserts that the Johnsons are in illegal possession of the Subject Property and are liable for trespass because the foreclosure sale purportedly transferring possession to their predecessor-in-title, DBNTC, is void since it was conducted without statutory and contractual authority.  (*See* Compl. [38-1] at ¶¶ 146, 148.)  "The subsequent conveyance to Defendants, James Q. Bacchus and Cecelia Bacchus, is therefore void as well."  (Compl. [38-1] at ¶ 147.)  The Complaint further avers that the Johnsons' title to the Subject Property is superior to that of the Bacchuses given the void nature of the foreclosure sale.  (*See* Compl. [38-1] at ¶¶ 164, 165.)  As

set forth in footnote 10, *supra*, there is Mississippi precedent supporting the Johnsons'
position that a void foreclosure sale fails to convey enforceable title.  Therefore, the
Johnsons have "at least stated a possibility of success on [their] trespass allegations."
*Housdan*, 2014 WL 4814760, at *4 (citation and internal quotation marks omitted).  The
Johnsons' claim for ejectment, which is generally grounded on the same legal theory as
their trespass claim (*viz.*, the void nature of the underlying foreclosure sale), is also not
implausible in light of the Mississippi statutory and case law cited in footnote 10, *supra*.
Because "the complaint states a claim under state law against the in-state defendant[s]"
under "a Rule 12(b)(6)-type analysis," remand is in order.  *Smallwood*, 385 F.3d at 573.

Assuming *arguendo* that the Complaint omits discrete facts that would determine
the propriety of the Bacchuses' joinder, the Court's consideration of the Bacchus
Declaration [31-9] does not mandate a finding of improper joinder and a denial of the
Motion to Remand [19].  As noted above, this Declaration is submitted in support of the
Defendants' contention that the Bacchuses were bona fide purchasers for value without
notice.  A plea that an individual "was a bona fide purchaser for value without notice
[BFP] constitutes an affirmative defense and must be sustained by competent proof."
*Daniel*, 771 So. 2d at 933 (¶ 32) (citation omitted).  The BFP defense is not sacrosanct
even further presuming that such proof is sustained.  The Fifth Circuit has examined
Mississippi law and found that the distinction between a voidable conveyance and a void
*ab initio* conveyance can determine the rights of a bona fide purchaser:

> [A] fraudulent conveyance is voidable rather than void *ab initio*—*i.e.*,
> it is subject to the intervening rights of a bona fide purchaser for value without
> notice of the fraud.  *See Parker v. King*, 235 Miss. 80, 108 So.2d 224, 226
> (1959) (fraudulently induced execution of a mineral deed is voidable); *see
> also Guice v. Burrage*, 156 F.2d 304, 306 (5th Cir. 1946); *Lee v. Boyd*, 195

Miss. 794, 16 So.2d 30, 30 (1943); *Sanders v. Sorrell*, 65 Miss. 288, 3 So. 661, 663 (1888). A forged conveyance, on the other hand, is void *ab initio* and cannot pass title to a bona fide purchaser. *See Securities Inv. Co. of St. Louis v. Williams*, 193 So.2d 719, 722 (Miss. 1967) ("The note and trust deed having been forgeries, even an innocent purchaser, for value and without notice that they were forgeries, could acquire no title.").

Mississippi courts have held deeds void *ab initio* in homestead cases. A homestead occupied by husband and wife cannot be conveyed without the signature of both spouses, and any deed made without both signatures is absolutely void and passes no title. *See Thornhill v. Caroline Hunt Trust Estate*, 594 So.2d 1150, 1152 (Miss. 1992). Mississippi courts have also held unauthorized tax sales by the State to be void *ab initio* rather than voidable. *See Pittman v. Currie*, 391 So.2d 654, 655 (Miss. 1980); *see also In re Hardy*, 910 So.2d 1052 (Miss. 2005) (citing a tax sale case in support of its holding that certain deeds made by an agent who exceeded her power of attorney were void *ab initio*); *Money v. Wood*, 152 Miss. 17, 118 So. 357, 360 (1928); *Hit-Tuk-Ho-Mi v. Watts*, 15 Miss. (7 S. & M.) 363 (Miss. Err. & App. 1846).

*In re Northlake Dev., L.L.C.*, 614 F.3d 140, 144 (5th Cir. 2010) (footnote omitted). This Court has also identified Mississippi precedent finding the BFP defense to be less than complete. *See Woolbert v. Lee Lumber Co.*, 151 Miss. 56, 117 So. 354, 357 (Miss. 1928) ("[T]he right of an infant to void his contract is an absolute and paramount right, superior to all equities of other persons, and may therefore be exercised against a bona fide purchaser from the infant's grantee.") (citation omitted); *Scott v. Nelson*, 820 So. 2d 23, 24 (¶¶ 3-4), 25 (¶ 8) (Miss. Ct. App. 2002) (holding that a deed to a bona fide purchaser was a nullity as a result of the cancellation of the prior conveyance between a conservator and his ward); *cf. Tenn. Props., Inc. v. Gillentine*, 66 So. 3d 695, 696-97 (¶¶ 1-5), 699 (¶ 17) (Miss. Ct. App. 2011) (*a*lthough the mortgagor's action to adjudicate title against a bona fide purchaser was barred by the applicable statute of limitations and "might have been weak," it was not so frivolous as to warrant the imposition of sanctions). However, the Court has not identified, and the parties have not cited, any

-20-

Mississippi state authority weighing a BFP defense against the type of claims asserted by the Johnsons in this case.

Defendants present a convoluted argument based on the above-referenced voidable/void *ab initio* dichotomy.  First, Defendants assert that the Johnsons seek to set aside the foreclosure on the Subject Property because they did not receive a permanent loan modification.  Next, Defendants posit that the substitute trustee undisputably had the authority to foreclose on the Subject Property.  Defendants then argue that whether the substitute trustee's exercise of authority "was wrongful because Plaintiffs did not receive a permanent modification could only potentially render the sale 'voidable,' not 'void.'"  (Defs.' Mem. of Auths. in Opp. to Mot. to Remand [32] at p. 13.)  As correctly noted by the Johnsons, Defendants' argument completely overlooks the Johnsons' claim that the "foreclosure sale . . . is void because it was conducted without statutory and contractual authority."  (Compl. [38-1] at ¶ 146.)  Whether or not the foreclosure sale was authorized, statutorily or contractually, is a merits issue implicating more than just the Johnsons' claims against the Bacchuses.  The Fifth Circuit has warned against a district court moving "beyond jurisdiction and into a resolution of the merits" in resolving a claim of improper joinder.  *Smallwood*, 385 F.3d at 574.  The Court will heed that warning here.  The Court will also refrain from venturing "an *Erie* guess to determine whether . . . [Plaintiffs'] claims could overcome the bonafide purchaser affirmative defense."  *Sturgis*, No. 3:13cv544, Order [36] at 10.  District courts should abstain from such an analysis in considering a claim of improper joinder since ambiguities in state law are to be resolved in favor of remand.  *Marshall v. Kan. City S. Ry. Co.*, 372 F. Supp. 2d 916, 920 (S.D. Miss. 2005) (citation omitted).  In short, the Bacchuses' BFP defense

-21-

cannot be decided "in a summary manner" and is better left for the state court on remand. *Smallwood*, 385 F.3d at 574.

Finally, the Court is not persuaded to retain jurisdiction over this action by the Defendants' reliance on *Sheppard v. Morris & Associates*, No. 1:11cv65, 2012 WL 1074204 (N.D. Miss. Mar. 29, 2012). In *Sheppard*, the district denied a motion to remand based on the finding that Tishomingo Baptist Church ("Tishomingo"), who purchased property previously belonging to the plaintiffs following a foreclosure sale, was an improper party to the litigation. *See* 2012 WL 1074204, at *1, 4. *Sheppard* is clearly distinguishable from this action. First, the plaintiffs failed to state a valid claim against Tishomingo by merely praying for and requesting that the transfer of the subject property to Tishomingo "be set aside and held for naught and for such other relief as the court may deem proper in the premises." *Id.* at *3. Here, the Johnsons have stated claims against the Bacchuses for trespass and ejectment. Second, it appears that the plaintiffs in *Sheppard* intended for Tishomingo's BFP status to be resolved in federal court. *See id.* (referencing an affidavit submitted by the plaintiffs designed to show that Tishomingo had notice of an adverse claim). The Johnsons argue that the Bacchuses' BFP defense should be decided in the Circuit Court of Forrest County, Mississippi. The Court accepts that argument based on the foregoing analysis and the numerous district court opinions cited in footnote 9, *supra*, remanding actions including Mississippi defendants alleged to be bona fide purchasers.

### III.  CONCLUSION

The removing parties have failed to establish any basis for the exercise of federal jurisdiction over this cause.

-22-

IT IS THEREFORE ORDERED AND ADJUDGED that the Plaintiffs' Motion to Remand [19] is granted.  Any other pending motion is denied as moot.  A separate order remanding this action to the state court shall follow.

SO ORDERED AND ADJUDGED this the 12th day of January, 2015.

s/Keith Starrett
UNITED STATES DISTRICT JUDGE